IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

FILED
OCT 2 2001
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| BRUCE JOHNSON, | ) | |
|     Plaintiff, | ) ) ) | |
| v. | ) ) | Case No.: CV-01-PT-319-E |
| NHB INDUSTRIES, INC., | ) ) ) | |
|     Defendant. | ) | |

ENTERED
OCT 2 2001

* * * * * * * *

| | | |
|---|---|---|
| HENRY CUNNINGHAM, | ) ) ) | |
|     Plaintiff, | ) ) | |
| v. | ) ) | Case No.: CV-01-PT-320-E |
| NHB INDUSTRIES, INC., | ) ) ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION

This cause comes to be heard on Wayne Morse ("Morse") and Clark & Scott, P.C.'s objection to the Order of U.S. Magistrate Judge T. Michael Putnam entered on August 20, 2001.

### FACTS

In 1999, Henry Cunningham ("Cunningham") and defendant NHB Industries, Inc. ("NHB"), reached a settlement agreement in a worker's compensation retaliation case before Judge Acker styled *Cunningham v. NHB Industries, Inc.*, CV-98-AR-2386-E ("*Cunningham I*"). According to the terms of the settlement, NHB was to reinstate Cunningham to the position of Assistant Supervisor of the Lamination Department. During settlement negotiations,

43

Cunningham was represented by Marvin Stewart ("Stewart"). NHB was represented by Morse and Clark & Scott, P.C.

Six lawsuits based on allegations of racial discrimination by NHB have recently been filed in the United States District Court for the Northern District of Alabama. Besides the two lawsuits before this court, the other cases are styled and numbered as follows: *Shawn Nix v. NHB Industries, Inc.*, CV-01-BU-0337-E; *Parnell Turner v. NHB Industries, Inc.*, CV-01-BU-0338-E; *Wendell Hall v. NHB Industries, Inc.*, CV-01-HGD-06260-E; and *Victor Wilson v. NHB Industries, Inc.*, CV-01-N-0625-E.[1] All six plaintiffs are represented by Stewart and his firm, The Stewart Law Group, P.C.

On August 8, 2001, Stewart sent a letter to Morse and to Peyton Lacy and Trent Scofield, attorneys for NHB in the pending cases before this court. Stewart expressed his intent to assert fraud and breach of contract claims on behalf of Cunningham arising out of allegedly fraudulent deposition testimony of an NHB employee. According to Stewart, NHB employee Bob Hilton-Lee "fraudulently testified" in his deposition that Cunningham, who was to be reinstated pursuant to terms of settlement agreement in *Cunningham I*, "was not returned to the position he held prior to his termination where he functioned as an assistant supervisor."

Stewart subpoenaed Morse's deposition testimony concerning his representation of NHB and issued a subpoenas duces tecum to Morse and Clark & Scott regarding their files generated in *Cunningham I*. Morse and Clark & Scott filed Motions to Quash in all six cases. Their motions were granted in the four cases not before this court. On August 20, 2001, Magistrate Judge Putnam conditionally granted the Motion to Quash in the cases before this court until such

---

[1] These case will be referred to collectively as "*Cunningham II*."

time as the court could conduct an *in camera* inspection of the files sought for production by the plaintiff. On August 23, 2001, Morse and Clark & Scott filed a Motion for Reconsideration. On August 27, 2001, Morse and Clark & Scott filed an Objection to Magistrate Judge Putnam's August 20, 2001 *in camera* inspection order. After the Objection was filed, Magistrate Judge Putnam denied the Motion for Reconsideration on August 28, 2001. On August 29, 2001, this court directed the parties to address Morse and Clark & Scott's Objection.

## ARGUMENTS

Morse and Clark & Scott argue that the Order of Magistrate Judge Putnam is clearly erroneous and contrary to law for three primary reasons. First, standing is satisfied to request this court to reconsider the Order of Magistrate Judge Putnam. According to Morse and Clark & Scott, a "non-party" has standing to appeal a Magistrate Judge's order under 28 U.S.C. § 636(b)(1)(A).[2] They note that the two courts that have addressed this issue have held that a non-party, as "affected persons," have standing to appeal such orders. *See Fischer v. McGowan*, 585 F. Supp. 978, 983 (D.R.I. 1984.); *Stacey v. Caterpillar, Inc.*, 901 F. Supp. 244, 246 (E.D. Ky. 1995).

Second, the doctrine of issue preclusion dictates that the Motion to Quash is due to be granted because Judges Nelson, Buttram, and Davis have granted four of Morse and Clark & Scott's Motions to Quash which address subpoenas identical to those present here. Morse and Clark & Scott assert that the Eleventh Circuit has described the doctrine of issue preclusion as follows:

---

[2] 28 U.S.C. § 636(b)(1)(A) provides in relevant part: "A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law."

3

> If, however, the subsequent litigation arises from a different cause of action, the prior judgment bars litigation only of those matters or issues common to both actions which were either expressly or by necessary implication adjudicated in the first.

*Christo v. Padgett*, 223 F.3d 1324, 1328 n.46 (11th Cir. 2000). They note that a final judgment or appealable order is unnecessary for issue preclusion to apply. *Id.* at 1339 n.47. Consequently, they argue that the decisions of Judges Nelson, Buttram, and Davis satisfy the criteria of issue preclusion because their decisions involved the same issues and are conclusively or "sufficiently firm," albeit not final judgments.

Finally, the Motion to Quash is due to be granted because the documents requested are protected from disclosure under the work-product doctrine and the attorney-client privilege. Morse and Clark & Scott contend that Stewart, as Cunningham's counsel in *Cunningham I*, has everything they have except their privilege documents. They assert that Stewart has the pleadings, settlement agreement, and communication between counsel generated in *Cunningham I*. Consequently, they claim that the only documents Stewart does not have are work-product and subject to attorney-client privilege.[3]

In response, plaintiffs argue that the Order of Magistrate Judge Putnam did not contradict clearly established law for three main reasons.[4] First, they argue, the attorney-client privilege

---

[3] Morse and Clark & Scott categorize these documents as client communications, trial preparation materials, and billing.

[4] Plaintiffs do not appear to contend that Morse and Clark & Scott do have standing to appeal the order. They do note that a district court reviews objects to pre-trial orders under *Fed. R. Civ. P.* 72(a):

> Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made. The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.

Plaintiffs contend that this court should not disturb Magistrate Judge Putnam's order absent a clear abuse of

does not apply to the facts. Plaintiffs do not believe that prior communications between Morse and NHB as to the job duties of Cunningham at the time he was terminated and upon his return are confidential communications. Instead, plaintiffs argue that these communications are facts at issue in the settlement agreement between NHB and the plaintiffs and neither the NHB nor the objecting parties have provided this court with any evidence that the facts are privileged. According to the plaintiffs, facts are not protected by the attorney-client privilege. Furthermore, a party cannot refuse to disclose a fact merely because it was incorporated into a communication with its attorney. *Citing Upjohn Co. v. United States*, 449 U.S. 338, 395-96 (1981). The plaintiffs maintain that statements made by NHB to Morse in *Cunningham I*, that conflict with inconsistent testimony in *Cunningham II*, are not protected by the attorney-client privilege.[5]

Second, even if the attorney-client privilege applies to the facts, the items and testimony subpoenaed fall into the "fraud" exception to the privilege. According to the plaintiffs, the attorney-client privilege does not protect communications made in furtherance of a crime or fraud. *See In re Grand Jury Proceedings v. John Roe, Inc.*, 142 F.3d 1416, 1419 n.4 (11th Cir. 1998). The plaintiffs assert that in order to demonstrate that the crime-fraud exception exists, there must be (1) a prima facie showing that the client was engaged in fraudulent conduct when he sought the advice of counsel, and (2) a showing that the attorney's assistance was obtained in furtherance of fraudulent activity or was closely related to it. *See In re Grand Jury Proceedings 89-10 (MIA)*, 938 F.2d 1578, 1581 (11th Cir. 1991). The plaintiffs contend that they have

---

discretion that leaves the reviewing court with "'the definite and firm conviction that a mistake has been committed.'" *Germann v. Consolidated Rail Corp.*, 153 F.R.D. 499, 500 (N.D.N.Y. 1994).

[5] Plaintiffs claim that at the "bare minimum," the trier of fact in *Cunningham II* cases are "entitled to hear testimony about the events surrounding the settlement agreement in *Cunningham I* to determine credibility issues for both parties on these matters."

satisfied these requirements. They argue that they made a prima facie showing that the defendant engaged in fraudulent conduct when it sought the advice of counsel. This argument is essentially based on the testimony of NHB's corporate representative, Mr. Hilton-Lee, who testified that NHB did not reinstate Cunningham to his former position as required by the terms of the settlement agreement. Furthermore, plaintiffs contend that because the settlement agreement was designed to cover the facts currently in dispute, there has been publication of the conversations between Morse and NHB and, thus, the conversations are not entitled to attorney-client privilege.

Finally, plaintiffs argue that the doctrine of issue preclusion is inapplicable to the present actions. Plaintiffs contend that the Eleventh Circuit has issued the following standard for issue preclusion:

> To claim the benefit of collateral estoppel the party relying on the doctrine must show that: (1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must have been "a critical and necessary part" of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Christo v. Padgett*, 223 F.3d 1324, 1339 (11th Cir. 2000) (quoting *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998). Plaintiffs claim that Morse and Clark & Scott have not met this burden of proof for two reasons. First, they note that a final judgment has not been reached in any of the *Cunningham II* cases so that Morse and Clark & Scott cannot demonstrate that the opinions on which it relies were "a critical and necessary part" of the judgments in those actions. Second, they comment that the plaintiffs have not been provided a full and fair opportunity to litigate the issue in the other *Cunningham II* cases.

NHB has also responded to Morse and Clark & Scott's objection. The defendant finds

significant that the plaintiffs have not addressed the argument that the documents they requested were privileged and protected by the work-product doctrine. The defendant contends that the plaintiffs have failed to meet their burden of establishing that they have a substantial need for the information and that seeking the information through other means would cause undue hardship. According to the defendant, plaintiffs have not demonstrated a substantial need for the information because neither Morse or Clark & Scott could provide them with information on the subject of Cunningham's reinstatement because they were not responsible for making decisions regarding his position when he returned to work. Furthermore, defendant alleges that the plaintiffs have failed to show that they cannot secure the information without undue hardship because Cunningham, himself, is available to inform the plaintiffs of his position and duties when he was returned to work.

NHB also contends that the plaintiffs have failed to establish that Morse's conversations with his client are not protected by the attorney-client privilege. NHB argues that conversations between an attorney and his client about settlement negotiation strategy "lie at the heart of the attorney client privilege." Defendant claims that the plaintiffs have failed to establish that the crime-fraud exception to the privilege applies.[6] Additionally, defendant argues that collateral estoppel is appropriate because the issues involved in these cases are identical to the ones before Judges Nelson, Buttram, and Davis. Defendant claims that the decisions to quash the subpoenas in those cases are "sufficiently firm" to support the application of collateral estoppel. Finally, defendant argues that the objection is due to be sustained because the subpoenas did not comply with *Fed. R. Civ. P.* 45(a)(3) because they were not signed by an attorney.

---

[6] It is the defendant's understanding that the plaintiffs' actual position is that no fraud occurred because Cunningham was reinstated to his former position.

7

In reply to plaintiffs' response, Morse and Clark & Scott argue that the plaintiffs have enunciated the wrong test for the crime-fraud exception to the attorney-client and work-product privileges. Instead of the two-part test championed by the plaintiffs, they contend that the following three-part test is appropriate:

> First, there must be a prima facie showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice. Second, there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it . . . . Furthermore, as the government conceded, the crime-fraud exception does not operate to remove communications concerning past or completed crimes or frauds from the attorney-client privilege.

*In re Federal Grand Jury Proceedings 89-10 (MIA)*, 938 F.2d 1578, 1581 (11th Cir. 1991) (internal citation omitted). Morse and Clark & Scott contend that plaintiffs have made no showing of the following elements: (1) that NHB was engaged in fraudulent conduct when it sought the advice of Morse; (2) that NHB was planning such conduct when it sought the advice of Morse; and (3) that NHB committed a fraud subsequent to receiving the benefit of Morse's advice. *See id.* They also argue that the crime-fraud exception does apply to these facts because it only applies to ongoing or future fraudulent conduct, not past conduct.[7] Finally, they note that the criminal cases cited by the plaintiffs regarding the crime-fraud exceptions are inapposite and that no civil case supports plaintiffs' "unorthodox request."

Morse and Clark & Scott also argue that their Motion to Quash is due to be granted because Morse is not a competent witness. They note that Morse was assigned by an insurance company to represented NHB in *Cunningham I*. They contend that there is no evidence that

---

[7] Morse and Clark & Scott note that any conversations Morse would have had with NHB regarding Cunningham's reinstatement would have occurred more than two years ago.

8

Morse did anything else for NHB or that he has any knowledge of what transpired between Cunningham and NHB subsequent to his representation. Essentially, they argue that Morse is not competent as a witness because he has no personal knowledge of the information that the plaintiffs are seeking.

## CONCLUSIONS OF THE COURT

This court cannot understand the premise of plaintiffs' arguments. Apparently they suggest that since it is alleged that Cunningham did not receive the remedy he bargained for in a settlement agreement, that the failure to do so must have been based on advice of counsel (which if true clearly implicates attorney client privilege) and that advice must have been fraudulently sought. Plaintiffs thus attempt to convert what may or may not be a simple breach of contract into fraud. Cunningham should know whether he did or did not receive the position he bargained for. The fact that he did not, if true, does not authorize a fishing expedition into attorney records. The objections of Morse and Clark & Scott and defendant NHB will be sustained. The order of the Magistrate Judge will be overruled consistent with the rulings of the other judges.

This 1st day of October 2001.

_____
ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT COURT JUDGE